# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOYCELYN H. MASON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-00378-N** |
| | ) | |
| **NANCY A. BERRYHILL,** *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joycelyn H. Mason brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 14, 15, 21) and those portions of the administrative record (Doc. 13) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held May 3, 2018, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under § 1383(c)(3) and sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in

# I.    *Background*

On December 7, 2013, Mason filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning May 4, 2010.[2]  After her applications were initially denied, Mason requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review.  Hearings were held with an ALJ on May 13, 2015, and June 8, 2016.  At the first hearing, Mason amended her alleged onset date to May 26, 2012.  A third hearing was scheduled for February 1, 2016, but Mason did not testify then.  On June 27, 2016, the ALJ issued an unfavorable decision on Mason's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits.  (*See* R. 14 − 28).

The Commissioner's decision on Mason's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on June 21, 2017.  (R. 1 − 5).  Mason subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI

this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 25, 27).

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8

(11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and "'[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…'" *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of

substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the

---

appeals] will not address an argument that has not been raised in the district court...Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').")*; In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

Eligibility for DIB and SSI requires that the claimant be disabled.

42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015)

(per curiam) (unpublished).[4]

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing

evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Mason met the applicable insured status requirements through December 31, 2015, and that she had not engaged in substantial gainful activity since the amended alleged disability onset date, May 26, 2012. (R. 19 – 20). At Step Two, the ALJ determined that Mason had the following severe impairments: hypertension, myalgia or myositis, mild left carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spines, and tachycardia. (R. 20). At Step Three, the ALJ found that Mason did

not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 20 – 21).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Mason had the RFC "to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,[6]]"

---

[6] "To determine the physical exertion requirements of different types of

subject to the following: Mason "could frequently reach in all directions with the left non-dominant hand, frequently handle, finger, and feel with the left hand, frequently push and pull using arm controls with the left hand, occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs, no work at unprotected heights or climbing of ladders, ropes, or scaffolds, no work around dangerous machinery, no concentrated exposure to temperature extremes such as the heat of a blow torch, and no exposure to vibrations." (R. 21 – 26).

Based on this RFC and the testimony of a vocational expert (VE), the ALJ determined that Mason was capable of performing past relevant work as an order clerk. (R. 26 – 27). Alternatively, the ALJ proceeded to Step Five and found that there exist a significant number of jobs in the national economy that Mason could perform given her RFC, age, education, and work experience. (R. 27 – 28). Thus, the ALJ found that Mason was not disabled. (R. 28).

## IV.  *Analysis*

At Step Two, after determining Mason's "severe" impairments, the ALJ also found several other impairments to be "medically determinable" but "non-severe." (R. 20). The ALJ then noted:

> The record also indicates a diagnosis of fibromyalgia; however, a review of the record finds no objective evidence to support such clinical findings, as set forth in SSR 12-2p (Evaluation of

---

employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations ... Each classification ... has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

Fibromyalgia).  The record does not show evidence of a history of widespread pain in all quadrants of the body that has persisted for at least three months and have at least eleven positive tender points on physical examination (Exhibits B6F, B10F, B16F, & B20F).

(R. 20).

Mason argues that the ALJ improperly applied Social Security Ruling (SSR) 12-2p in finding her fibromyalgia (FM) was not a medically determinable impairment (MDI).[7]  The undersigned disagrees.

Under SSR 12-2p, the Commissioner

will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence []describe[d] in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record. These sections provide two sets of criteria for diagnosing FM, which [the Commissioner] generally base[s] on the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia (the criteria in section II.A.), or the 2010 ACR Preliminary Diagnostic Criteria (the criteria in section II.B.).

_____

[7] At oral argument, Mason's counsel argued it was unclear whether the ALJ found at Step Two that fibromyalgia was not an MDI, or that it was an MDI but was not severe.  It is reasonably apparent the ALJ found it was not an MDI. After listing Mason's severe and non-severe impairments, the ALJ identified fibromyalgia as only a "diagnosis" and expressly found that Mason did not meet certain criteria from SSR 12-2p's tests for determining fibromyalgia as an MDI. Moreover, had the ALJ found fibromyalgia to be an MDI but non-severe, any error in failing to classify fibromyalgia as severe would be harmless because the ALJ found other severe impairments at Step Two. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if the claimant has any severe impairment.  This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.").

SSR 12-2P, 77 FR 43640, 43641, 2012 WL 3104869 (July 25, 2012) (footnotes omitted).[8]  For a claimant to have an MDI of fibromyalgia, the claimant must meet "all three" criteria under either the Section II.A test or the Section II.B test.  *Id.*  Only if the ALJ "establish[es] that a person has an MDI of FM" will the ALJ then  "consider it in the sequential evaluation process to determine whether the person is disabled."  *Id.* at 43643.

Mason claims that the ALJ "only examined" the Section II.A criteria and "made no mention nor did she address whether [Mason] met" the Section II.B criteria.  (*See* Doc. 14 at 4).  It is true that having "at least eleven positive tender points on physical examination" is only a criterion under the Section II.A test.  *See* SSR 12-2P, 77 FR at 43641.  However, as the Commissioner correctly points out, both tests require a showing of a "history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3

---

[8] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration."  *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).  "Although Social Security Rulings are not binding [on federal courts], we accord the rulings great respect and deference if the underlying statute is unclear and the legislative history offers no guidance."  *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 938 (11th Cir. 2014) (per curiam) (unpublished) (citing *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 27, 1981)).  The Commissioner has not argued against applying SSR 12-2p in this case, and the undersigned is not independently aware of any authority that counsels against its application.

months." *See id.* at 43641-42.[9] The ALJ found that Mason did not satisfy this criterion, thus foreclosing a finding of fibromyalgia as an MDI under either test.

Mason's brief cites the following portions of the record purportedly "document[ing] widespread pain in all four quadrants that has persisted over years[:]" R. 317-318, 397, 467 - 474, 486, 489 - 490, 527, 538 - 539, 549, 598, 611 - 613, 618, 628, 659-660, 664, 687-688. (Doc. 14 at 6 & n.9). The Commissioner responds that, "[w]hile Plaintiff cites evidence showing that she complained of right-sided pain, Plaintiff fails to cite evidence of pain on the left side of her body that persisted for at least three months…" (Doc. 21 at 8). The Commissioner proceeds to address each of the records Mason cites, concluding that Mason "identifies only four occasions during the seven-year period from 2010 through 2016 when she complained of pain on the left side of her body: on November 15, 2010 (Tr. 471), June 22, 2011 (Tr. 472), July 10, 2014 (Tr. 549), and September 8, 2014 (Tr. 597)[:]"

> On November 15, 2010, more than one year before her alleged onset date in May 2012, Plaintiff complained of pain in her "knees," and in her "wrists" and "fingers" (Tr. 471). On June 22, 2011, approximately seven months later but still almost one year before her alleged disability onset date, Plaintiff complained of pain in both ankles and wrists (Tr. 472). On July 10, 2014, more than three years later, Plaintiff complained of pain in her left and right ankles

---

[9] Criterion 1 of the Section II.B test expressly adopts the definition of "a history of widespread pain" used in Criterion 1 of the Section II.A test. *See* SSR 12-2P, SSR 12-2P, 77 FR at 43642 (first criterion of Section II.B test is "[a] history of widespread pain (see section II.A.1.)"). In quoting the Section II.B test in her brief, Mason conspicuously omits the parenthetical adoption of Section II.A's "history of widespread pain" criterion. (*See* Doc. 14 at 3).

lasting two weeks (Tr. 549), and on September 8, 2014, Plaintiff complained of diffuse arthralgias in her ankles, hips, and hands (Tr. 597).

(*Id.* at 8 – 9).

The Commissioner argues: "Even if all four occasions are considered,…these four, isolated occasions are still insufficient to show the required history of widespread pain, that is, that Plaintiff complained of left-sided pain (as well as right-sided pain) that persisted for at least three months. On the contrary, the evidence shows that Plaintiff typically complained only of right-sided pain, and only rarely—on four occasions during a period spanning seven years—reported left-sided pain." (Doc. 21 at 9 – 10).[10]

At oral argument, counsel for Mason argued that SSR 12-2p's "widespread history of pain" only requires a showing that pain occurred in each of the four quadrants of the body at some point in time during a period lasting at least 3 months. However, the 1990 ACR Criteria for the Classification of Fibromyalgia (the basis for the Section II.A test, from which the Section II.B test adopts its

---

[10] The Commissioner also argues that "the first two of these four occasions occurred prior to Plaintiff's alleged disability onset date in May 2012 and should be disregarded for purposes of determining whether Plaintiff had a medically determinable impairment of fibromyalgia during the relevant period before the ALJ." (Doc. 21 at 9 – 10). However, the undersigned is not convinced that evidence from before the alleged onset date is irrelevant to the issue of whether fibromyalgia is at least an MDI. *Cf.* SSR 12-2p, 77 FR at 43642 ("As in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI. When a person alleges FM, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment.").

"history of widespread pain" criterion) indicates that pain must be present in all four quadrants <u>simultaneously</u> in order to be considered "widespread." *See* Frederick Wolfe *et al.*, *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia*, 33 Arthritis and Rheumatism 160, 171 table 8 (Feb. 1990) ("Pain is considered widespread when **all of the following are present**: pain in the left side of the body, pain in the right side of the body, pain above the waist, and pain below the waist…Widespread pain must have been present for at least 3 months." (emphasis added)).[11] While SSR 12-2p allows that "[t]he pain may fluctuate in intensity and may not always be present[,]" simultaneous pain in all four quadrants of the body must nevertheless "persist" (that is, be more than intermittent) for at least 3 months.

Substantial evidence supports the ALJ's determination that the record did not show a "history of widespread pain" because the record documents only sporadic instances of pain in Mason's left quadrants over a period of several years.[12] In a pain questionnaire dated December 12, 2013, Mason reported that her pain was located on her right leg, thigh, arm, and hand, with no mention of any left-side pain, and that it had begun May 4, 2010, her initial alleged onset date. (R. 317). Mason acknowledges that her pain was largely concentrated in

---

[11] https://www.rheumatology.org/Portals/0/Files/1990_Criteria_for_Classification_Fibro.pdf (last visited July 5, 2018).

[12] Because failure to show a history of widespread pain is fatal under both the section II.A and II.B tests of SSR 12-2p, the Court need not address Mason's arguments that she meets the other criteria of the section II.B test.

her right side, both in her brief (*see* Doc. 14 at 10 ("In December 2013, Ms. Mason completed a pain questionnaire indicating pain in the **_right_** leg, **_right_** thigh, **_right_** arm and **_right_** hand. (Tr. 317-318)...Ms. Mason also testified at more than one hearing that her problems persisted mainly on the **_right_** side." (emphasis in original)) and at oral argument. While Mason's counsel provided record citations at oral argument that she claimed demonstrate a longitudinal history of left-side pain, most of those citations were duplicative of the ones provided in Mason's brief and addressed by the Commissioner in her brief, *see supra*, and the non-duplicative citations did not reveal additional instances of left-side pain.[13]

Accordingly, the ALJ did not err in finding that fibromyalgia was not an MDI at Step Two; thus, the ALJ was not required to consider fibromyalgia in the later steps. *See* SSR 12-2p, 77 FR at 43643 ("Once we establish that a person has an MDI of FM, we will consider it in the sequential evaluation process to

_____

[13]    Mason suggests that the Court can infer pain from other symptoms in the record such as swelling, weakness, numbness, etc. Mason cites no authority that would suggests the Court may so infer, and SSR 12-2p indicates that such symptoms are more properly considered "somatic symptoms" relevant to Criterion 2 of the Section II.B test. *See* SSR 12-2p, 77 FR at 43642 & n.9. To the extent the Commissioner declined to infer pain from those symptoms, this Court cannot substitute its judgment for the Commissioner's. *Winschel*, 631 F.3d at 1178.

Mason also suggests that diagnoses of fibromyalgia in the record are themselves indicative of widespread pain on a particular date. However, SSR 12-2p is clear that the Commissioner "cannot rely upon [a] physician's diagnosis alone" in finding fibromyalgia to be an MDI. 77 FR at 43641. Instead, the Commissioner "will find that a person has an MDI of FM if the physician diagnosed FM **and** provides the evidence we describe in section II.A. or section II. B." *Id.* (emphasis added).

determine whether the person is disabled."); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your **medically determinable impairments** of which we are aware…when we assess your residual functional capacity." (emphasis added)).[14] Accordingly, the Court **OVERRULES** Mason's claims of reversible error and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Mason's applications for a period of disability, DIB, and SSI, made final by the Appeals Council's denial of review on June 21, 2017, is **AFFIRMED** under 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and

---

[14] Mason's other claim of error is that the ALJ improperly rejected the medical opinion of one consultative examining physician, Dr. Shaikh, and instead gave great weight to the medical opinion of another consultative examiner, Dr. Yager. Mason bases this argument largely on the premise that, "[b]ecause the ALJ failed to properly evaluate the claimant's fibromyalgia as 'severe', she improperly disregarded some of the medical evidence…" (Doc. 14 at 7 – 8). As has been explained, however, the ALJ properly found that fibromyalgia was not an MDI and was therefore not required to consider it in the sequential evaluation. Moreover, an ALJ is not required to afford special deference to the opinions of non-treating physicians, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam), and "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock*, 764 F.2d at 835 (quotation omitted). As she was required to do, the ALJ stated with particularity the weight given the consultative examiners' medical opinions and the reasons therefor, (R. 26); *Winschel*, 631 F.3d at 1179, and the Court finds no error in the weight assigned to those opinions, essentially for the reasons explained in the Commissioner's brief (Doc. 21 at 11 – 14).

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 6th day of July 2018.

_/s/ Katherine P. Nelson_
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**